**CONDITIONALLY GRANT in Part, and DENY in Part; Opinion Filed April 5, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00050-CV

## IN RE EVELYN NELKE, Relator

**Original Proceeding from the 470th Judicial District Court
Collin County, Texas
Trial Court Cause No. 470-51760-2018**

# OPINION

Before Justices Brown, Schenck, and Reichek
Opinion by Justice Schenck

In this mandamus proceeding, relator Evelyn Nelke (Maternal Grandmother) seeks relief

from the trial court's November 29, 2018 temporary orders (Temporary Orders) in this suit

affecting the parent–child relationship. After reviewing the parties' briefs and the mandamus

record, we have determined Maternal Grandmother is entitled to partial relief from the Temporary

Orders. We therefore conditionally grant the writ in part and deny it in part.

## BACKGROUND

Real party in interest Mother, Father, and Older Child[1] lived with real party in interest

Paternal Grandmother for about a year. In February 2018, Father committed suicide, and Older

Child and Mother, pregnant with Younger Child, moved out of Paternal Grandmother's home and

into Maternal Grandmother's home.

---

[1] Both Older Child and Younger Child have initials K.E.K., so we will refer to them as Older Child and Younger Child throughout this opinion.

On March 23, 2018, Paternal Grandmother filed an original petition in suit affecting the parent–child relationship (SAPCR) regarding Older Child. That same month, Child Protective Services (CPS) received a referral regarding Older Child.

In July 2018, Younger Child was born, and about that time, CPS received a referral regarding Younger Child. Concerned about allegations of Mother's drug use, CPS conducted an investigation, during which Mother tested positive for drug use. Mother agreed to a CPS parent–child safety placement, which placed both children with Maternal Grandmother and required that Mother move out of Maternal Grandmother's home and have only supervised visitation with the children.

On July 12, 2018, Maternal Grandmother filed a petition to intervene in Paternal Grandmother's SAPCR regarding Older Child and filed an original SAPCR regarding Younger Child.[2] In her original petition, Maternal Grandmother sought to be named the sole managing conservator of Younger Child. On July 24, 2018, Paternal Grandmother nonsuited her SAPCR regarding Older Child.[3] On September 14, 2018, Paternal Grandmother petitioned to intervene in Maternal Grandmother's original SAPCR regarding Younger Child, seeking conservatorship of, possession of, and access to Younger Child.

On November 29, 2018, the respondent trial court judge held a temporary orders hearing, at the conclusion of which the trial court ruled that Paternal Grandmother would have some access and possession and be appointed a possessory conservator "because the elements of [family code section] 102.004(a)(1) were met." That same day, the trial court signed the Temporary Orders, which appointed Maternal Grandmother as managing conservator and Mother and Paternal

---

[2] In the petition to intervene in the SAPCR regarding Older Child, Maternal Grandmother named a different man than Father as Older Child's alleged father.

[3] Paternal Grandmother later testified that since filing the original SAPCR regarding Older Child she learned that her son was not the biological father of Older Child.

Grandmother as possessory conservators, granted Paternal Grandmother an expanded standard possession schedule, granted Mother supervised access at agreed times, and provided for health insurance and medical support of Younger Child. The trial court set trial on the SAPCR regarding Younger Child for March 7, 2019.

On January 14, 2019, Maternal Grandmother filed this petition for writ of mandamus and a motion for emergency relief requesting this Court stay the underlying proceedings pending this Court's ruling on her petition for writ of mandamus. By order dated January 18, 2019, this Court granted Maternal Grandmother's motion for emergency relief, stayed the underlying proceedings, stayed the Temporary Orders, and requested that the real parties in interest respond by February 1, 2019. Only Paternal Grandmother responded.

In her petition for writ of mandamus, Maternal Grandmother raises two issues. First, she challenges Paternal Grandmother's standing to file a petition to intervene in Maternal Grandmother's pending original SAPCR regarding Younger Child. Second, Maternal Grandmother argues the trial court abused its discretion in awarding Paternal Grandmother possession of and access to Younger Child.

### AVAILABILITY OF MANDAMUS REVIEW

Mandamus is an extraordinary remedy. *See In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). Mandamus will ordinarily issue only to correct a clear abuse of discretion when there is no other adequate remedy at law. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). In the context of temporary orders affecting possession of and access to a child, the supreme court has held that a trial court abuses its discretion, warranting mandamus relief, if it grants possession of or access to a grandparent without proof sufficient to overcome the presumption that a parent acts in the child's best interest by proving that denial of the grandparent's possession of or access to the child would significantly

–3–

impair the child's physical health or emotional well-being. *See In re Scheller*, 325 S.W.3d 640, 646 (Tex. 2010) (orig. proceeding) (per curiam).

**DISCUSSION**

## I. Paternal Grandmother's Standing

As a preliminary matter, we address Paternal Grandmother's argument that we should not address Maternal Grandmother's challenge to her standing on mandamus because Maternal Grandmother did not object to her standing in the trial court.[4] However, subject matter jurisdiction cannot be waived or conferred by agreement and can be raised at any time. *See In re D.S.*, 555 S.W.3d 301, 314 (Tex. App.—Dallas 2018, pet. filed). Accordingly, we will address whether the trial court erred in concluding at the temporary orders hearing that Paternal Grandmother had standing.

Because the family code by its terms confers standing on parties, we begin by reviewing whether a party has established standing within the framework of that code. *See State v. Naylor*, 466 S.W.3d 783, 791 (Tex. 2015) (requiring mandamus petitioner intervening after final judgment to first establish its standing to present its argument on appeal); *see also In re Derzapf*, 219 S.W.3d 327, 331–33 (Tex. 2007) (orig. proceeding) (per curiam) (analyzing whether party established standing as set forth in section 153.432 of family code). A grandparent may file an original suit requesting managing conservatorship under section 102.004(a), intervene in a pending suit under section 102.004(b), or file a suit to seek possession or access under section 153.432. TEX. FAM. CODE ANN. §§ 102.004(a), (b); 153.432.

Here, the petition in intervention maintains that Paternal Grandmother has standing to intervene under section 102.004 of the family code because (1) she is related to the child within

___

[4] At the conclusion of the temporary orders hearing, Maternal Grandmother's counsel stated, "We're not arguing that [Paternal Grandmother] doesn't have standing. But in order for the Court to grant the possession, the Court has to make the findings under [family code section] 153."

–4–

the third degree of consanguinity and (2) "the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." Further, the trial judge stated on the record at the November 29, 2018 hearing that she was granting Paternal Grandmother custody, possession, and access under section 102.004(a)(1), not under section 153.433(b), and that she believes the elements of 102.004(a)(1) were met.

Section 102.004(a)(1) provides:

(a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development . . . .

FAM. § 102.004(a)(1).

Subsection (a), however, applies by its plain terms only to the filing of an "original suit," which Paternal Grandmother did not file in connection with Younger Child; instead she filed a petition to intervene in Maternal Grandmother's suit. *See id.* Paternal Grandmother could not, therefore, establish standing under section 102.004(a)(1) because it does not apply to an intervention. *In re E.C.*, No. 05-17-00723-CV, 2017 WL 6505867, at *4 (Tex. App.—Dallas Dec. 20, 2017, no pet.) (mem. op.) (foster parent's standing to intervene governed by section 102.004(b) regardless of standing to bring original suit).

Accordingly, we cannot sustain the trial court's jurisdictional conclusion on the grounds asserted and found below. That does not end our inquiry, of course. Because standing is a component of subject matter jurisdiction and a question of law, we can conclude the trial court did not err in concluding Paternal Grandmother had standing on a subsection other than the one referenced by the trial court at the hearing. *See In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.). The trial court could have relied on section 102.004(b) in concluding

Paternal Grandmother had standing to sue. *See* FAM. § 102.004(b). Section 102.004(b) applies to any person who seeks to intervene in a pending suit even if that person may have had standing to bring an original suit. *See In re E.C.*, 2017 WL 6505867, at *4. Section 102.004(b) provides that

> the court may grant a grandparent or other person, subject to the requirements of Subsection (b-1) if applicable,[5] deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this chapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

FAM. § 102.004(b).

Maternal Grandmother urges that Paternal Grandmother could not establish the first requirement for standing under section 102.004(b) because Paternal Grandmother did not allege in her petition that she had substantial past contact with the child, and the evidence at the hearing showed she had no contact with the child before filing the petition to intervene. Paternal Grandmother argues in her response the "substantial past contact" requirement does not apply to a grandparent but instead applies only to "other person." We agree. If section 102.004(b) affords grandparents standing only if they have substantial past contact with their grandchild, then the word "grandparent" in subsection (b) is rendered meaningless as "grandparents" are inevitably persons themselves and their separate inclusion in the text would be pointless. We presume the Legislature intended the words it used to have effect. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). Further, under the last-antecedent doctrine, which we use to aid in interpreting statutes, a qualifying phrase should be applied only to the words or phrase immediately preceding it to which it may be applied without impairing the meaning of the sentence. *Id.* at 580–81.

---

[5] Subsection (b-1) limits when a foster parent may be granted leave to intervene. *See* FAM. § 102.004(b-1).

Our conclusion is supported by more than just grammar. A grandparent is commonly and well understood to stand in a different relation to a child than members of the general public. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 64 (2000) (citing States' recognition of important role grandparents play in many cases, including that of parental nature); *Bos v. Smith*, 556 S.W.3d 293, 296 (Tex. 2018) ("Grandparents have a special role in the family unit and often serve as safety nets for their children and grandchildren. Lending a hand, a heart, and an ear can be especially important when loved ones are experiencing the trauma of divorce."); *see also* KINSHIP CARE, https://www.dfps.state.tx.us/Child_Protection/Kinship_Care/default.asp (last visited March 25, 2019) (CPS program recognizing "significant roles" extended families have in rearing children and that "courts are required to consider a temporary placement with a relative" when children are removed from their homes); KINSHIP MANUAL, https://www.dfps.state.tx.us/Child_Protection/Kinship_Care/documents/KinshipManual.pdf (last visited March 25, 2019) (detailing Grandparent Grant, financial assistance specifically to help grandparents, great-grandparents, and great-great-grandparents buy initial items for children who move to live in applicant's home). Further, the question of standing is just a first-level inquiry into who may be heard and not what is to be done. *See In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018) (reviewing a trial court's grant of plea to jurisdiction on grandparents' standing). Accordingly, we conclude the qualifying phrase "substantial past contact" modifies the second term rather than both items in the list of persons with standing. *See In re C.J.N.-S.*, 540 S.W.3d 589, 592 (Tex. 2018) (applying last-antecedent test to family code section 154.303(a)(1)).

In reaching this conclusion, we note our prior opinion in which we applied the substantial past contact requirement to a grandmother. *See In re J.R.W.*, No. 05-15-01479-CV, 2017 WL 3083930, at *5 (Tex. App.—Dallas July 20, 2017, pet. denied) (mem. op.). However, in that case, we had no occasion to consider whether the statute required grandparents as opposed to "other

persons" to establish substantial past contact because we concluded the record contained sufficient evidence of substantial past contact. *See id.* Moreover, this Court has stated in more than one opinion that "under family code section 102.004(b), the trial court may grant leave to intervene to grandparents and those 'deemed by the court to have had substantial past contact with the child.'" *See In re A.G.*, No. 05-18-00725-CV, 2018 WL 6521893, at *2 (Tex. App.—Dallas Dec. 12, 2018, no pet.) (mem. op.) (applying section 102.004(b) to non-parent with whom child had been placed by CPS for two weeks); *In re L.S.B.*, No. 05-17-00929-CV, 2018 WL 3598958, at *1 (Tex. App.— Dallas July 27, 2018, no pet.) (mem. op.) (applying section 102.004(b) to non-parent with whom child had been placed by CPS for three months).

We also recognize the opinion of one of our sister courts of appeals concluding intervening grandparents lacked standing because they failed to establish substantial past contact, but that opinion did not include any analysis as to whether grandparents as opposed to "other persons" should be required to do so. *See In re Tinker*, 549 S.W.3d 747, 751–52 (Tex. App.—Waco 2017, orig. proceeding [mand. denied]); *see also In re Clay*, 02-18-00404-CV, 2019 WL 545722, at *4– 5 (Tex. App.—Fort Worth Feb. 12, 2019, orig. proceeding [mand. denied]) (similarly interpreting section 102.004(b) to require grandparents to show "substantial past contact").[6] As noted above, we believe the text compels a different reading. A contrary interpretation of section 102.004(b) would also lead to absurd results. If an orphaned child were removed from the care of an abusive non-parent, for example, a grandparent who only learned of the existence of the child after CPS filed a SAPCR would not have standing to intervene, but the abusive non-parent with substantial contact with the child would, leaving the court in a position to hear only from the abuser or the

---

[6] In *In re Clay*, the Fort Worth Court of Appeals held that, despite their involvement in caring for a child before the mother's death, maternal grandparents lacked standing to intervene because they set forth insufficient amount of evidence that the father's sole managing conservatorship would significantly impair the child's physical health or emotional development. *In re Clay*, 02-18-00404-CV, 2019 WL 545722, at *4–5 (Tex. App.—Fort Worth Feb. 12, 2019, orig. proceeding [mand. denied]). Like the court in *In re Tinker*, the *Clay* court did not include any analysis of whether grandparents as opposed to "other persons" must show substantial past contact but instead parenthetically described section 102.004(b) as "conferring standing on grandparent with 'substantial past contact with child' to intervene in pending SAPCR only with proof of substantial impairment." *See id.* at *5.

government as it determined the child's best interest. We cannot conclude the Legislature intended this result.

Having concluded Paternal Grandmother did not need to establish substantial past contact, we will now address whether Paternal Grandmother presented the statutorily required satisfactory proof that appointment of Mother as a sole managing conservator would significantly impair Younger Child's physical health or emotional development. *See* FAM. § 102.004(b); *In re E.C.*, 2017 WL 6505867, at *3 ("under section 102.004(b) of the family code, a person seeking to intervene in a suit affecting the parent–child relationship, must request leave and make an evidentiary showing"). As detailed below, Paternal Grandmother offered evidence sufficient to support that showing.

Here, the record showed Mother agreed to place both children with Maternal Grandmother pursuant to a CPS parent–child safety placement after she had tested positive for drug use. The safety placement required that Mother not live with Maternal Grandmother, limited Mother to supervised visitation, and was still in place at the time of the hearing. The CPS employee testified that its investigation was closed, but that CPS did not feel it was safe for Mother to live with the children until she had started services, Mother had not started services at the time of the hearing, and CPS would still be concerned to have her living with Maternal Grandmother. Further, Mother testified that she had engaged in drug use while living with Older Child and while pregnant with Younger Child, and, although she had been seeking treatment and therapy prior to the hearing, she agreed her children needed to live with Maternal Grandmother. From the foregoing, we conclude the record contains satisfactory proof that appointment of Mother as sole managing conservator would significantly impair Younger Child's physical health or emotional development. *See* FAM. § 102.004(b).

We conclude the trial court did not err in concluding that Paternal Grandmother had standing to intervene, although we find that standing to be supported under section 102.004(b). We therefore overrule Maternal Grandmother's first issue.

## II.    Trial Court's Grant of Possession to Paternal Grandmother

In her second issue, Maternal Grandmother argues the trial court abused its discretion in entering a temporary order awarding Paternal Grandmother possession of and access to Younger Child. Maternal Grandmother points to section 153.433's presumption that a parent acts in the best interest of the parent's child and urges that the record does not support a contrary finding. A trial court abuses its discretion if it issues temporary orders giving possession to a grandparent who has not overcome the statutory presumption of section 153.433 that a parent acts in her child's best interest. *See In re Scheller*, 325 S.W.3d at 646. Such error is "irremediable" and warrants mandamus relief. *See id.*

On these facts and in looking at the statute, we question whether the parental presumption remains extant.

Section 153.433 provides what facts a grandparent must establish in order to allow a trial court to order reasonable possession of or access to a grandchild by a grandparent, including, among other things:

> the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being . . . .

*See* FAM. § 153.433(a)(2); *In re Derzapf*, 219 S.W.3d at 333 ("As amended, section 153.433 now echoes the United States Supreme Court's plurality opinion in *Troxel*, 530 U.S. at 68, that a trial court must presume that a fit parent acts in his or her child's best interest.").

–10–

As noted, in order to establish standing to intervene under section 102.004(b), Paternal Grandmother had to present satisfactory proof that *appointment of Mother as a sole managing conservator* would significantly impair Younger Child's physical health or emotional development. *See* FAM. § 102.004(b). The question on the merits, however, contemplates a different factual inquiry of whether *denial of Paternal Grandmother's possession of or access to Younger Child* would significantly impair the child's physical health or emotional well-being (and thus overcome the statutory presumption that Mother is acting in the best interest of Younger Child). *See id.* § 153.433(a)(2).

We will begin with the observation that the status of the parental presumption at this stage is less than clear. Given the unique positions here, it is arguable—as at least one other court of appeals has determined—that the parental presumption is no longer extant. *See In re Smith*, 260 S.W.3d 568, 574 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (declining to extend parental presumption to non-parents grandfather and wife appointed as joint managing conservators in prior agreed decree).

At present, Mother retains only supervised access to Younger Child as a possessory conservator while Maternal Grandmother acts as managing conservator. This arrangement is a product of Mother's own agreement and arguably reflects in itself a manifestation of the presumption that she is in fact acting in the child's best interest as the case proceeds toward its final disposition. Meanwhile, of course, Mother is not seeking appointment as managing conservator. Maternal Grandmother is. Mother's decisions to this point of the proceedings may not result in her presently or ultimately becoming managing conservator of Younger Child. But that is not the object of our inquiry. It is, instead, whether Mother is acting in the child's best interest. Section 153.433, as written, requires a grandparent to overcome the presumption the parent acts in the child's best interest and does not reference whether that parent must presently

(or temporarily) be acting in the capacity of a managing conservator. *See id.*; *see also* FAM. § 153.433(a)(3) (requiring the grandparent establish that the parent of the child is incarcerated, incompetent, dead, or does not have actual or court-ordered possession of or access to the child).

Regardless of whether the parental presumption remains applicable here, Paternal Grandmother must show either that (1) denial of her possession or access to Younger Child would significantly impair the child's physical health or emotional well-being (so as to overcome the parental presumption if it applies) or (2) awarding her possession of and access to Younger Child was in the child's best interest. *See* FAM. § 153.002; *In re Smith*, 260 S.W.3d at 574 (applying best-interest test after concluding parental presumption did not apply because child's managing conservators were grandfather and his wife, not child's parents). For the reasons set forth below, we conclude that she showed neither of these things.

The record at this stage shows Younger Child was safe, "happy and doing well" with Maternal Grandmother in a placement agreed to by CPS and Mother. The CPS employee testified and Paternal Grandmother admitted that Younger Child was safe with Maternal Grandmother with Mother remaining engaged. The CPS employee expressed concerns about placing Younger Child with Paternal Grandmother because both Mother and Father had used drugs while living with Paternal Grandmother and Older Child, and Paternal Grandmother had not acted to protect Older Child at that time.

Maternal Grandmother testified she had been caring for Younger Child since she brought the child home from the hospital, and that she was concerned that Paternal Grandmother did not protect Older Child from exposure to the drugs Mother and Father used while living with Paternal Grandmother. Maternal Grandmother testified that she was also concerned Paternal Grandmother would not relinquish custody of Younger Child because, in February 2018, Paternal Grandmother had previously refused to return Older Child to Maternal Grandmother or Mother. Maternal

Grandmother testified Paternal Grandmother had not contacted her to see Younger Child or to ask how the child was doing.

Mother testified she did not want Paternal Grandmother to have any access to Younger Child and that she did not think it would be in the best interest of the children to be with anyone other than Maternal Grandmother. Mother also stated "the best decision I made was leaving" the children with Maternal Grandmother, the children are happy and doing well in school, and that Mother is still a part of their lives. Mother testified that she had used drugs while living with Paternal Grandmother despite the fact that Paternal Grandmother was aware that she and Father were drug users.

Paternal Grandmother explained that she had refused to return Older Child to Mother and Maternal Grandmother in February 2018 because she wanted to establish "evidence that I was doing everything I could to protect" the child. Paternal Grandmother admitted she knew Father was using drugs while living with her, but stated he was using them on the weekend when he was in jail. She denied knowing that Mother was using drugs until Father told her so shortly before his death. Paternal Grandmother testified that, if the trial court allowed her to have contact with Younger Child, she would be willing to help Younger Child with "everything," including the child's education, living, care, and other needs. Paternal Grandmother testified she had contacted Maternal Grandmother and Mother multiple times to see Older Child, but did not recall if she had asked to see Younger Child.

On this record, there is no evidence that denial of Paternal Grandmother's possession of or access to Younger Child would significantly impair Younger Child's physical health or emotional well-being sufficient to satisfy Paternal Grandmother's statutory burden under section 153.433. *See* FAM. § 153.433(a)(2). Moreover, on this record and at this stage of the proceedings, we cannot conclude awarding Paternal Grandmother possession of or access to Younger Child would be in

the child's best interest.[7]  *See* FAM. § 153.002; *In re Smith*, 260 S.W.3d at 574 (applying best-interest test after concluding parental presumption did not apply where child's managing conservators were grandfather and his wife and grandmother sought access to and possession of child).  Accordingly, we conclude the trial court abused its discretion in awarding Paternal Grandmother possession of and access to Younger Child.

We sustain Maternal Grandmother's second issue.  We therefore direct the trial court to vacate the portions of the Temporary Orders that award Paternal Grandmother possession of and access to Younger Child.

CONCLUSION

We deny in part and conditionally grant in part Maternal Grandmother's petition for writ of mandamus.  We deny Maternal Grandmother's petition for writ of mandamus on her issue concerning Paternal Grandmother's standing.  We conditionally grant the petition for writ of mandamus on the issue of the grant of possession to Paternal Grandmother.  We order the trial court to vacate the portions of the Temporary Orders appointing Paternal Grandmother a possessory conservator and awarding her possession of Younger Child.  A writ will issue only in the event the trial court fails to comply with this opinion and the order of this date.  We lift the stay issued by this Court on January 18, 2019.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

190050F.P05

---

[7] The trial court did not make any findings on whether award of possession or access to Paternal Grandmother was in Younger Child's best interest, nor does the record support any such implied findings.