**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00247-CV**
_____

**IN RE M.B.**

**Original Proceeding**
**418th District Court of Montgomery County, Texas**
**Trial Cause No. 19-03-04129-CV**

**MEMORANDUM OPINION**

Does a fit grandparent have the right to intervene and be made a party to a suit affecting the parent-child relationship (SAPCR) when the circumstances that led to the Department's removal of the children show the children's sole surviving parent, their father, is awaiting trial after being charged with murdering their mother?[1] Here, the court denied Grandfather the right to intervene, stating the court failed to "see how [allowing the grandfather to intervene into the suit would] benefit the Court's

---

[1] *See* Tex. Fam. Code Ann. § 102.004(b) (West 2019).

responsibility in deciding what's in the best interest and the safety of [the] two children."[2]

Subsequently, Grandfather petitioned this Court seeking mandamus relief. He argues the trial court abused its discretion by denying his request to intervene and be heard on his claim seeking rights of custody and possession to the children. The children are his grandchildren based on his biological relationship through their mother. We conclude the trial court abused its discretion by denying Grandfather's petition for leave to intervene so he could be heard on the merits of his claims.

Background

The following facts are not disputed by the parties to the mandamus proceeding at issue here: (1) Mother and Father had two children together before Mother's death in March 2019; (2) Father is in jail and awaiting trial on charges alleging that he murdered Mother in March 2019; (3) upon Mother's death, the Department sued Father seeking to terminate Father's parental rights to their two children; (4) in June 2019, Grandfather filed a petition to intervene into the

---

[2] The attorneys present for the hearing the trial court conducted to consider Grandfather's petition represented the children's father, their maternal grandmother, their maternal grandfather, the children, and the Department. During the hearing, only the Department's attorney objected to Grandfather's request to intervene. Neither Father, Grandmother, nor the children's attorney have filed briefs in the proceeding Grandfather filed in this Court.

Department's SAPCR; (5) the trial court conducted an evidentiary hearing on Grandfather's request to intervene in July 2019; and (6) the children, the subjects of the SAPCR, were four-years old and four-months old when the trial court issued the ruling at issue here.

Grandfather's live pleading, his amended petition in intervention, asserts claims of standing under four separate provisions in the Texas Family Code.[3] Under section 102.004(b), one of the sections Grandfather relied on in his pleadings, trial courts "may grant a grandparent or other person . . . deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this chapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development."[4] To shorten the opinion, we address whether section 102.004(b) required the trial court to allow Grandfather to intervene before addressing Grandfather's arguments over whether he also has standing to be heard under sections 102.004(a)(1), 153.432(b), and 153.433(a)(3)(C) of the Family Code.

---

[3] *See id.* § 102.004(a)(1), (b) (West 2019); §§ 153.432(b), 153.433(a)(3)(C) (West 2014).

[4] *Id*. § 102.004(b).

Three witnesses, Grandfather, Grandmother, and a caseworker employed by the Department and assigned to investigate the SAPCR testified in the hearing on Grandfather's request to intervene.[5] In his testimony, Grandfather stated he had a significant relationship with his grandchildren before his daughter, the children's mother, died. According to Grandfather, his daughter brought his grandchildren to see him at least once a month and sometimes every other week. At times, Grandfather and his daughter along with the two children spent weekends at his home. During the hearing, Grandfather explained that while he and Grandmother had never been married, he wanted to have a relationship with his grandchildren that was protected by having court-ordered rights. On cross-examination, Grandfather agreed that he did not have a role as a parent raising the children before the date his daughter died. He agreed that he had not financially supported the two children, explaining he did not do so because his daughter worked. Grandfather testified that he and Grandmother lived together after their daughter was born but had separated when his daughter was two-years old. He agreed that there were periods over the years when he did not see his daughter because he worked when she was growing up at times in other towns. He explained that his daughter was living with

---

[5] During the hearing, Father's attorney did not question Grandmother or Grandfather. Father's attorney also presented no argument in the hearing to reveal his position about whether the trial court should allow Grandfather to intervene.

Grandmother when she was killed and agreed that Grandmother had more contact with the grandchildren than he had given his daughter's living arrangements in the months leading up to her death. Grandfather testified that since his daughter's death, he had seen his grandchildren on about three occasions for less than fifteen minutes each, all at Grandmother's home. He claimed he asked Grandmother to allow him to see them more frequently, but she declined. Grandfather described his relationship with his daughter immediately before she died as "pretty good[.]" According to Grandfather, his daughter was fostering a relationship between him and his grandchildren before she died.

Grandmother was the second witness who testified in the hearing. Grandmother testified that her daughter, with her children, moved in and began living with her around November 2018. She explained that her grandchildren had continued to live with her after their mother died. Grandmother stated that she had allowed the grandchildren to see their Grandfather for less than two hours since March 2019, but she suggested she would have allowed Grandfather to see them longer on those occasions had he wanted to do so. Grandmother testified she did not know whether the court should allow Grandfather to see the grandchildren, but she preferred the Department to decide how often Grandfather should be allowed to see them. Grandmother agreed that Grandfather had asked her to see his grandchildren

more often, but she declined to allow any more visits. Explaining why she declined his requests, Grandmother testified the Department told her that no one should be allowed access to the grandchildren or the Department would place the children in foster care. According to Grandmother, she did not think it would be good for the grandchildren to live with Grandfather, but he should, nevertheless, be allowed to visit with them. Grandmother explained that Grandfather had never seen the grandchildren regularly, Grandfather had a "negative" relationship with his daughter before she died, and Grandmother denied Grandfather's claim that he had supported his daughter after leaving her home. On cross-examination, Grandmother agreed she told Grandfather she thought the grandchildren should have a relationship with him and she does not think Grandfather represents any danger to them.

The Department's caseworker was the third witness in the hearing. According to the caseworker, Grandfather provided all the information she asked him to provide when the Department investigated the case. The caseworker testified that the Department did not object to Grandfather visiting the grandchildren. But then, she explained the Department did not agree the grandchildren should have a relationship with him. The caseworker never explained why.

The Department's and Grandfather's attorneys then presented the trial court with their arguments on Grandfather's request to intervene. Grandfather's attorney

argued the evidence and pleadings established Grandfather possessed standing to intervene. In its argument, the Department's attorney acknowledged neither parent was available to raise the children, Grandmother had done a good job caring for the grandchildren after the Department took them into custody, and that both before and after Mother died, Grandmother had engaged in a parental role in the children's lives. The Department also advised the trial court it would like to try the case in August 2019, but the evidence does not show why it wanted the court to try the case only five months after Mother died. Nonetheless, Grandfather's attorney never stated that he would seek a continuance should the trial court grant his request to intervene. The attorney ad litem appointed to represent the grandchildren and the attorney who represented Father waived their right to present argument.

When the hearing concluded, the trial court announced that it had decided to deny Grandfather's request and the court struck Grandfather's request to intervene. Immediately thereafter, the Department asked the trial court to set the case for trial on August 28, 2019 and the court granted that request.

Standard of Review

At this stage, the only issue before the trial court was whether the Family Code gave Grandfather standing to intervene. Generally, questions of standing require a court to make "a threshold determination of whether a plaintiff has a sufficient

7

*justiciable interest* in the suit's outcome to be entitled to a judicial determination. Without standing, a court lacks subject matter jurisdiction over the case, and the merits of the plaintiff's claims thus cannot be litigated or decided."[6]

Here, the merits of Grandfather's claims seeking possessory rights have not yet been decided by any court so the merits of his claims are not before us.[7] So the question we address is not whether Grandfather will ultimately prevail on any of his claims at trial. Instead, the question is whether Grandfather has a right to be heard and present evidence so a factfinder can decide whether his claims have any merit.[8] Because standing presents courts with a question of law, a trial court's ruling on an issue involving standing is reviewed using a *de novo* standard.[9] To evaluate whether a party has standing to sue, we examine the pleadings filed by the party asserting a legal right together with the evidence in the record that is relevant to the question of the party's standing to determine whether standing exists on the party's claims.[10]

---

[6] *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018) (cleaned up).

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

When the dispute over standing involves the merits of the case—which the Department suggests is what occurred here—we must decide whether the evidence and pleadings show that an issue of material fact exists as related to the trial court's best-interest finding.[11] If the arguments concerning standing do not implicate the merits of the parties' claims, however, we evaluate whether the evidence in the record supports the trial court's findings.[12]

Because standing to intervene in a suit affecting the parent-child relationship is governed by the Family Code, "we apply statutory-interpretation principles in determining whether a plaintiff falls within the category of persons upon whom standing has been conferred. When interpreting statutes, we presume the Legislature's intent is reflected in the words of the statute and give those words their fair meaning. We analyze statutes as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded."[13]

---

[11] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[12] *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

[13] *In re H.S.*, 550 S.W.3d at 155 (cleaned up).

Analysis

We focus on whether section 102.004(b) of the Texas Family Code gave Grandfather a statutory right to be heard on his claims since that provision is dispositive here.[14] Section 102.004 required Grandfather to establish only one thing to intervene into the Department's SAPCR—a decision appointing the sole living parent, Father, to be the children's managing conservator would significantly impair the children's physical health or emotional development.[15] In his petition, Grandfather alleged that appointing Father "as sole managing conservator would significantly impair the children's physical health or emotional development." In the hearing, the Department never presented any evidence to dispute Grandfather's pleadings and evidence on that jurisdictional fact.

Nonetheless, the Department argues the trial court had the discretion to look beyond the statutory requirement in section 102.004 to decide whether Grandfather had the right to intervene. According to the Department, the fact that a statute states that a trial court *may grant* a grandparent's request allowed the trial court to evaluate

---

[14] *See* Tex. Fam. Code Ann. § 102.004(b).

[15] *Id.*; *see also In re Nelke*, 573 S.W.3d 917, 921 (Tex. App.—Dallas 2019, orig. proceeding) (concluding that the criteria "deemed to have substantial past contact" with the children applies to the "other person" and not "grandparent" under a proper grammatical construction of the statute).

10

whether the intervention would serve the children's best interest. According to the Department, giving Grandfather the right to be heard on his claims was not in the best interest of the children because his presence in the suit will complicate the "issues in the case[.]"

We recognize that statutes employing the term *may* rather than *shall* usually indicate the Legislature intended to make the provision discretionary.[16] But a statute's use of the term *may* "does not permit trial courts complete discretionary authority: trial courts do not have discretion to make decisions in an arbitrary or unreasonable manner, without reference to guiding rules or principles."[17] For instance, it is not clear whether the Legislature intended to allow the trial court to look to criteria regarding standing beyond the one stated for grandparents in section 102.004(b). Had the Legislature intended other criteria to apply to standing, the Legislature could have easily placed that additional criteria into the statute.[18] The Department does not dispute that Grandfather presented evidence of the criteria for standing expressly stated in section 102.004(b).

---

[16] Tex. Gov't Code Ann. § 311.016(1) (West 2013).

[17] *Pedernal Energy, LLC, v. Bruington Engineering, LTD.*, 536 S.W.3d 487, 492 (Tex. 2017).

[18] *See id.* at 494.

11

Nonetheless, the Department argues the Legislature's use of the term *may grant* a grandparent's petition in intervention allows trial courts to determine whether, as a matter of standing, the children's best interest will be served by allowing a fit grandparent the right to intervene into a pending SAPCR. Even if the Department is correct that courts may look to a merits issue, best interest,[19] at hearings challenging a grandparent's standing, the Department presented no evidence to meet its burden to rebut Grandfather's evidence that allowing him to intervene would serve the children's best interest.

The Legislature has recognized that grandparents often must serve in roles much like those of parents to their grandchildren over extended periods of time.[20] If the Department is correctly interpreting the statute, Grandfather merely needed to raise a fact issue on the best-interest issue to establish he has a right to be heard. Grandfather met his burden by presenting evidence showing the circumstances the children are now in due to Mother's death together with testimony from two of the three witnesses who testified—Grandmother and Grandfather—showing that the children's interest would be better served if Grandfather had a role in their lives.

---

[19] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (providing a non-exhaustive list of factors to guide courts in resolving best-interest issues).

[20] *See In re H.S.*, 550 S.W.3d at 163.

12

Grandmother also testified that Grandfather was not a dangerous person. No evidence in the record contradicts Grandmother's and Grandfather's testimony, and the Department has not alleged or presented any evidence to prove otherwise.

For instance, in the four-month period after Mother died, Grandfather presented evidence that he had contact with the children once or twice a month. While the relationship between Grandfather and the children might not yet be close, the children are very young and the evidence shows the only reason Grandfather has not seen the children more is rooted in the instructions the Department gave Grandmother not to allow anyone to have access to the children. We conclude the only evidence before the trial court reveals that issues of material fact exist about whether awarding Grandfather legal rights to the children would be in their best interest.[21]

Next, the Department argues the trial court could have reasonably determined that allowing Grandfather to join the SAPCR would complicate and delay the trial. This is yet another argument asserting the *may grant* language in section 102.004(b) permits trial courts to look outside the criteria the Legislature set out for a grandparent's standing in Chapter 102 of the Family Code. And even if the *may*

---

[21] *See Miranda*, 133 S.W.3d at 226.

*grant* language gave the trial court that authority, a matter we need not expressly decide, the trial court abused its discretion based on the evidence in the record.

When, in July 2019, the trial court heard Grandfather's request to intervene, there was no date yet established for the trial. While the trial court granted the Department's request and set the case for trial in August 2019 immediately after ruling on Grandfather's intervention, nothing in the record suggests that a statutory extension of time would have been required to allow the trial court to dispose of the SAPCR within with the one-year deadline that the Legislature established for courts to dispose of suits filed by the Department.[22] Moreover, the record in this proceeding fails to show why the Department wanted such a quick trial setting. Parties have rights to exercise their legal rights and be heard, and courts should not be complicit with a State agency's effort to frustrate a grandparent who seeks to exercise his statutory rights to litigate a justiciable interest the Legislature gave grandparents in situations like the ones that exist here.

Last, the Department suggests the trial court did not interfere with Grandfather's rights because he could "arguably bring his suit post-termination"

---

[22] *See* Tex. Fam. Code Ann. § 263.401(a) (West 2019). While the temporary order making the Department the temporary managing conservator is not in the record, the information that is in the record before us suggests that the removal order did not issue until after the father allegedly murdered the mother, and it is undisputed the children's mother died on March 20, 2019.

under sections 153.432 and .433 of the Family Code.[23] We disagree for the following reasons. First, section 153.432 of the Family Code does not apply to Grandfather's claims. Instead, section 153.432 addresses a grandparent's right to sue for possession and access, not conservatorship, and Grandfather's petition includes a conservatorship claim.[24] Second, section 153.432 requires a grandparent to file an affidavit with supporting facts showing why denying the grandparent access would impair the child's physical health or emotional well-being.[25] Grandfather did not file the required affidavit with his petition and amended petitions to intervene. Third, section 153.432 does not apply to a grandparent's intervention into an existing SAPCRs.[26] And fourth, section 153.433 also does not apply because it is not a statute that gives grandparents standing to be heard on a SAPCR claim.[27]

---

[23] *Id*. §§ 153.432, .433 (West 2014).

[24] *See id*. § 153.432(a) (providing that a grandparent may file an original suit or request to modify to seek possession or access to a grandchild); *see also In re J.R.W.*, No. 05-15-01479-CV, 2017 Tex. App. LEXIS 6831, at *10 (Tex. App.— Dallas July 20, 2017, pet. denied) (mem. op.).

[25] *Id*. § 153.432(c).

[26] *Id*. § 153.432(a).

[27] *See In re B.G.D.*, 351 S.W.3d 131, 140 (Tex. App.—Fort Worth 2011, orig. proceeding) (noting that "a grandparent's standing is not conferred by section 153.433").

We conclude Grandfather demonstrated that he possesses a justiciable interest in the pending SAPCR. We further conclude the trial court abused its discretion by denying Grandfather's right to be heard. Because Grandfather has no adequate legal remedy to be heard on his rights to custody or possession of his grandchildren, we hold Grandfather is entitled to mandamus relief.[28]

We express no view about whether the evidence presented in the hearing might require a factfinder to award Grandfather any legal rights to custody, access, or possession of his grandchildren when the factfinder decides the merits of his claims. Whether his claims have merit is simply not the question that is before us here. We conditionally grant mandamus relief. We are confident the trial court will promptly grant Grandfather's request seeking leave to intervene. The writ shall issue only if the trial court fails to comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on August 23, 2019
Opinion Delivered October 3, 2019

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[28] *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

16