TIG PREMIER INSURANCE
COMPANY, Appellant

v.

John PEMBERTON and Texas
Workers' Compensation
Commission, Appellees.

No. 10–02–155–CV.

Court of Appeals of Texas,
Waco.

Dec. 31, 2003.

Bates L.L.P., Dallas, for Appellant/Relator.

Norman W. Darwin, Attorney At Law, Ft. Worth, Bradley D. McClellan, Asst. Atty. Gen., Austin, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Judge ALLEN (Sitting by Assignment).*

## OPINION

BILL VANCE, Justice.

In 1996, John Pemberton was injured on the job when he fell over a railing and hurt his right shoulder and left knee. His employer had worker's compensation insurance with TIG Premier Insurance (TIG), which did not contest the compensability of Pemberton's injury. Three months after his fall, Pemberton was hospitalized and diagnosed with deep vein thrombosis (DVT), *i.e.,* blood clots, in his right leg.

■ Two years later, after the parties could not agree on Pemberton's impairment rating, the Texas Workers' Compensation Commission (TWCC) designated Dr. Leslie Bishop to conduct an impairment-rating examination on which impairment-income benefits could be based. TEX. LAB.CODE ANN. §§ 408.123, 408.124 (Vernon 1996 & Supp.2003). He assessed a ten-percent impairment rating, two percent of which was for the DVT. TIG was notified at the time of Bishop's findings, including those about the DVT, and it did not dispute the findings at that time. But six months later, TIG filed a dispute complaining that the DVT was not caused by the fall but rather was a result of three prior surgeries on the right knee combined

Thad D. Spalding, David M. Hymer, Lisa Cherry Pittard, Hermes, Sargent

* George Allen, Judge of the 54th District Court of McLennan County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon Supp.2004).

with prolonged convalescence after the fall, and therefore was not compensable. Furthermore, TIG argued that the statute requiring a carrier to contest an injury within sixty days of learning of it did not apply because that statute pertains only to whether the carrier disputes the overall injury after initially learning of an employee's claim, and not to disputes which arise later about the extent or specific aspect of the injury. *Id.* § 409.021(c) (Vernon 1996).[1]

There was a contested hearing before a TWCC hearings officer, and the officer found that, although Pemberton did not show a causal relationship between the fall and the DVT, TIG waived any complaint by not contesting the DVT within sixty days of learning of Bishop's findings. Pemberton did not appeal the finding of no causal relationship, and therefore that decision became final and binding. *Id.* § 410.169 (Vernon 1996). TIG appealed the finding about the sixty-day rule. An appeals panel affirmed the hearing officer's finding applying the rule. TIG filed suit in district court for judicial review of the appeals panel's decision and argued against the application of the sixty-day rule. *Id.* subch. G (Vernon 1996). TWCC and TIG filed competing motions for summary judgment; TWCC's motion was based on the sixty-day rule. The trial court granted TWCC's motion, affirmed the appeals panel's decision, and denied TIG's motion. TIG appeals, complaining that the sixty-day rule does not apply. Because we agree, we will reverse the summary judgment and render judgment for TIG.

### Standard of Review for Summary Judgments

■ We review a summary judgment *de novo. Rucker v. Bank One Texas, N.A.,*

36 S.W.3d 649, 653 (Tex.App.-Waco 2000, pet. denied). "Rule 166a provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine fact issue." *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). The movant has the burden to prove by summary-judgment evidence that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." TEX.R. CIV. P. 166a(c); *Rhone–Poulenc,* 997 S.W.2d at 222; *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). We must accept as true all evidence that is favorable to the non-movant, and we must resolve all doubts and indulge every reasonable inference regarding the existence of a genuine issue of fact in favor of the non-movant. *Rhone–Poulenc,* 997 S.W.2d at 223; *Nixon,* 690 S.W.2d at 548–49.

■ When competing motions for summary judgment are filed and one is granted and one denied, the appellate court should determine all questions presented and should render the judgment the trial court should have rendered. *FM Properties Operating v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *see also Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958). But this is only so if, as here, both parties' motions sought final judgment, *i.e.,* relief on all issues. *Montgomery v. Blue Cross & Blue Shield,* 923 S.W.2d 147, 152 (Tex.App.-Austin 1996, writ denied); *Runyan v. Mullins,* 864 S.W.2d 785, 790 (Tex. App.-Fort Worth 1993, writ denied.).

### Rules of Statutory Construction

■ The propriety of this summary judgment turns on the construction of sec-

---

1. If there was no injury, there can be no "compensable injury" as a matter of law, and so the carrier does not have to comply with section 409.021. *Continental Cas. Co. v. Williamson,* 971 S.W.2d 108, 110–11 (Tex.App.-Tyler 1998, no pet.).

tion 409.021(c) of the Labor Code. TEX. LAB.CODE ANN. § 409.021. Statutory construction issues are legal questions reviewed *de novo*. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). In construing a statute, the reviewing court should determine and give effect to the Legislature's intent. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). The court must first look at the statute's plain and common meaning. *Allen*, 15 S.W.3d at 527; *Fitzgerald v. Advanced Spine Fixation*, 996 S.W.2d 864, 865 (Tex.1999). The court presumes that the Legislature intended the plain meaning of the words it used. *Allen*, 15 S.W.3d at 527. And words, unless used as a term of art or connected with a particular trade or subject matter, are given their ordinary meaning. *In re BACALA*, 982 S.W.2d 371, 380 (Tex.1998); TEX. GOV'T CODE ANN. § 312.002(a) (Vernon 1998). If the statute is unambiguous, the reviewing court typically adopts the interpretation supported by the plain meaning of the statute's words; rules of construction and extrinsic aids should not be applied, nor extraneous matters inquired into. *Allen*, 15 S.W.3d at 527 (extraneous matters); *Fitzgerald*, 996 S.W.2d at 865–66 (rules of construction and extrinsic aids).

 But if the statute is ambiguous, *i.e.*, the intent of the Legislature is not clear, the reviewing court then turns to the legislative history of the statute, the nature and object to be obtained by the statute, and the consequences that would follow from alternative constructions. *In re BACALA*, 982 S.W.2d at 380. Also, the court should consider the entire act when construing a portion of it, *e.g.*, the meaning and use of a term throughout the act. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). In addition, "[c]onstruction of a statute by an agency charged with its enforcement is entitled to serious consideration [if] that construction is reasonable and does not contradict the statute's plain language." *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex.2002).

Other matters the court *may* consider are listed in the Code Construction Act, which is applicable to enactments by the 60th Legislature in 1967 and thereafter:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998).

### TWCC's Motion for Summary Judgment

The statute at issue is section 409.021:

§ 409.021. Initiation of Benefits; Insurance Carrier's Refusal; Administrative Violation

(a) An insurance carrier shall initiate compensation under this subtitle promptly. Not later than the seventh day after the date on which an insurance carrier receives written notice of an injury, the insurance carrier shall:

(1) begin the payment of benefits as required by this subtitle; or

(2) notify the commission and the employee in writing of its refusal to pay and advise the employee of:

(A) the right to request a benefit review conference; and

(B) the means to obtain additional information from the commission.

(b) An insurance carrier shall notify the commission in writing of the initiation of income or death benefit payments in the manner prescribed by commission rules.

(c) **If an insurance carrier does not contest the compensability of an injury on or before the 60th day after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability. The initiation of payments by an insurance carrier does not affect the right of the insurance carrier to continue to investigate or deny the compensability of an injury during the 60–day period.**

(d) An insurance carrier may reopen the issue of the compensability of an injury if there is a finding of evidence that could not reasonably have been discovered earlier.

(e) An insurance carrier commits a violation if the insurance carrier does not initiate payments or file a notice of refusal as required by this section. A violation under this subsection is a Class B administrative violation. Each day of noncompliance constitutes a separate violation.

TEX. LAB.CODE ANN. § 409.021 (emphasis added).

The parties agree that TIG received Bishop's written report on April 24, 1998, but did not dispute the finding about the DVT until October 14, 1998. Therefore, TIG waited almost six months before complaining about the DVT being included in the impairment rating. TWCC and Pemberton argue that that is a clear violation of section 409.021(c)'s sixty-day rule.

But TIG argues that section 409.021 pertains only to a carrier's initial response to notice of injury. It asserts that not contesting the overall injury does not preclude it from later contesting a specific part of the injury, in this case the DVT, which it calls an "extent-of-injury" matter.

■■■ We find that the statute is somewhat ambiguous. After applying the rules of statutory construction, we agree with TIG.

First, by its express wording and also by its context, section 409.021 pertains only to the overall injury. It is entitled "Initiation of Benefits; Insurance Carrier's refusal; Administrative Violation." (Emphasis added). Also, four of its subsections, "a," "b," "c," and "e," use, respectively, the terms "initiate compensation," "initiation of income or death benefit payments," "initiation of payments," and "initiate payments." Thus by its express terminology the section pertains to the initial response by the carrier after receiving notice that an employee has been injured. In addition, the section is part of chapter 409 which addresses procedures for initiating benefits when an employee is injured. Thus, read in context, section 409.021 pertains only to the initiation of benefits.

Second, other workers compensation statutes allow for contesting individual claims or parts of the overall claim without regard to the sixty-day restriction. For instance, section 408.027 allows a carrier to refuse payment for medical services, or reduce the amount from that charged, if the carrier disputes the amount of payment or the entitlement to payment. *Id.* § 408.027 (Vernon Supp.2003). The carrier is entitled to a hearing on the matter. *Id.* In addition, a carrier may dispute an impairment rating. *Id.* § 408.125 (Vernon Supp.2003). Finally, chapter 410 sets

forth a variety of procedures for adjudication of any disputes regarding compensation as they arise. *Id.* ch. 410 (Vernon 1996 & Supp.2003).

Third, amendments made to the administrative regulations in March 2000, while not in effect at the time of the appeals panel's decision in July 1999, support our conclusion. Specifically, there is section 124.3(c):

§ 124.3. Investigation of an Injury and Notice of Denial/Dispute

(a) Except as provided in subsection (b) of this section, upon receipt of written notice of injury as provided in § 124.1 of this title (relating to Notice of Injury) the carrier shall conduct an investigation relating to the compensability of the injury, the carrier's liability for the injury, and the accrual of benefits. If the carrier believes that it is not liable for the injury or that the injury was not compensable, the carrier shall file the notice of denial of a claim (notice of denial) in the form and manner required by § 124.2 of this title (relating to Carrier Reporting and Notification Requirements).

(1) If the carrier does not file a notice of denial by the seventh day after receipt of the written notice of injury, the carrier is liable for any benefits that accrue and shall initiate benefits in accordance with this title.

(2) If the carrier files a notice of denial after the seventh day but before the 60th day after receipt of written notice of the injury, the carrier is liable for and shall pay all benefits that had accrued and were payable prior to the date the carrier filed the notice of denial and only then is it permitted to suspend payment of benefits.

(3) If the carrier wants to deny compensability of or liability for the injury after the 60th day after it received written notice of the injury

(A) the carrier must establish that the evidence that it is basing its denial on could not have reasonably been discovered earlier.

(B) the carrier is liable for and shall pay all benefits that were payable prior to and after filing the notice of denial until the Commission has made a finding that the evidence could not have reasonably been discovered earlier.

(b) If the claim involves the death of an injured employee, investigations, denials of compensability or liability, and disputes of the eligibility of a potential beneficiary to receive death benefits are governed by § 132.17 of this title (relating to Denial, Dispute, and Payment of Death Benefits).

(c) **Texas Labor Code, § 409.021 and subsection (a) of this section do not apply to disputes of extent of injury.** If a carrier receives a medical bill that involves treatment(s) or service(s) that the carrier believes is not related to the compensable injury, the carrier shall file a notice of dispute of extent of injury (notice of dispute). The notice of dispute shall be filed in accordance with § 124.2 of this title and be filed not later than the earlier of:

(1) the date the carrier denied the medical bill; or

(2) the due date for the carrier to pay or deny the medical bill as provided in Chapter 133 of this title.

28 TEX. ADMIN. CODE § 124.3 (West 2003) (emphasis added).

In conclusion, TIG was not bound by the sixty-day rule in contesting the inclusion of the DVT in Pemberton's impairment rating, and the trial court erred in determining that it was. We sustain the issue.

### TIG's Motion for Summary Judgment

 We also will render judgment for TIG. Its motion requested final judgment based on the hearing officer's finding that there was no causal relationship between the fall and the DVT. TWCC did not contend otherwise or present summary judgment evidence that there was a causal relationship. It based its motion for summary judgment solely on the sixty-day rule. Also, Pemberton forfeited any complaint about the causal relationship between his fall and the later-diagnosed condition, because he did not raise that with the appeals panel and so did not exhaust administrative remedies. TEX. LABOR CODE ANN. §§ 410.252, 410.302 (Vernon 1996). Because the complaint was forfeited, and alternatively because TIG's summary judgment evidence conclusively shows that there is no causal relationship, we will render judgment in favor of TIG. *Id.;* TEX.R. CIV. P. 166a(c); *Rhone–Poulenc,* 997 S.W.2d at 222.

### Conclusion

We construe section 409.021(c)'s sixty-day rule as applying only to the carrier's initial response to a notice that an employee has been injured. Therefore, the trial court erred as a matter of law in granting TWCC's motion for summary judgment on that basis. Also, TIG's summary judgment evidence establishes that there is no genuine issue as to the absence of a causal connection between the fall and the DVT. Accordingly, we reverse the summary judgment and render summary judgment for TIG.