

IN THE
TENTH COURT OF APPEALS

No. 10-22-00219-CV

IN THE INTEREST OF K.T.R., A CHILD

From the 74th District Court
McLennan County, Texas
Trial Court No. 2020-3858-3

## DISSENTING OPINION

Context matters. From this simple tenant comes the most fundamental rule of statutory construction. That rule is that, as a reviewing court, we must construe a statute so that all parts have meaning. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (stating that court "must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous"). If a construction of one part of the statute guts the meaning or purpose of another provision, we look at the broader context to see why and construe the statute so that all parts have meaning.

In this particular situation, the literal words of one small part of Section 102.005 seem to support the Court's analysis. That provision states "an adult who has had actual possession and control of the child for at least two months during the three-month period

immediately preceding the filing of the petition" can force themselves into court as a party for participation in the suit which will determine the child's future. *See* TEX. FAM. CODE ANN. §102.005(3).

But in the context of the statute, the legislature was very restrictive on when and how foster parents could involve themselves beyond being a witness, in the lives, and litigation, involving their foster children. This is by design. This has a purpose. The only reason the foster parent has any relationship with the child is because of the State's effort to protect the child. To achieve that result, the State has to be able to control some aspects of who can participate and how the legal process involving the child develops. To do this it takes time and a plan. That plan sometimes requires the placement of the child with foster parents. But the State cannot stop the natural process of bonding that occurs between a child and someone who provides the essentials of life, including love. Thus, the State has a strong interest in controlling, or limiting, the foster parent's ability to become involved in, AKA interfere with, the plan the State has for the child.[1]

Due to time constraints, however, I will not extend this opinion with an exhaustive discussion of the legal analysis that supports my opinion of the way to construe the statute. The mother's brief contains such an analysis, thus, I have attached as an appendix

---

[1] It is not that I understand why the trial court removed the child a day or two before the foster parents would have had standing to intervene in the suit. But that is not the legal question before us and the legislature has set the policy by putting a hard timeframe and giving no discretion in this situation. The trial court made a decision that had the specific purpose of not letting the foster parents obtain standing. It is not for us to write in another exception to the limited circumstances for the benefit of a seemingly well-intentioned foster parent.

to this dissenting opinion an excerpt of that brief.[2] While it is not expressed in the manner that I might have written it as an opinion of the Court, the brief contains a thorough analysis of the legislative history and why and how the statute was amended over time and thus came to be written as it is. Moreover, it explains why the minor part of the statute in Section 102.005(3) upon which the Court relies is simply not available to foster parents to insert themselves into the life of a child under the State's care. It addresses the precedent and why the case relied upon so heavily by the Court simply stopped short in its analysis necessary to make the statute work as a whole. In summary, it is because if one provision is cut out of the statute and made to stand alone, it means foster parents can use it to inject themselves into the litigation involving their foster child, and other provisions of the statute becomes wholly meaningless. The mother's analysis, however, gives meaning to all parts of the statute. In that context, it all works together.

Because the Court construes and applies only one provision of the statute and ignores what it does in the context of the statute as a whole, and thus lets the foster parents intervene in the suit involving their foster child, I respectfully dissent.[3]

TOM GRAY
Chief Justice

---

[2] The TDFPS has likewise filed a thorough brief that discusses the legal analysis and expresses some of the concepts in a different manner than the mother. But I do not find it necessary to append excerpts of the TDFPS's brief, but, like all briefs filed with the court, it is available on the Court's website.

[3] If what the Court does here is the proper analysis, we missed it completely when the Court summarily denied the mandamus petition filed almost a year ago by the foster parents. *See In re Heuer*, No. 10-22-00003-CV, 2022 Tex. App. LEXIS 435 (Tex. App.—Waco Jan. 21, 2022,) (orig. proceeding). Unfortunately, the parties were thus made to suffer through an entirely pointless trial and the child's life remains in limbo. The legal issue involved in this case cries out for a definitive interpretation by the Supreme Court of Texas.

Dissenting Opinion delivered and filed December 21, 2022



# Argument

1. **The trial court properly granted the motions to strike and the pleas to the jurisdiction.**

Although Appellants brief their challenges to the trial court's ruling on the motions to strike separately from their challenges to its ruling on the pleas to the jurisdiction, these complaints are closely interrelated because they both rest on the issue of whether Appellants have standing under section 102.005 of the Family Code. A proper exercise in statutory construction reveals that they do not.

Accordingly, the trial court properly struck their plea in intervention and properly granted the Department's and Mother's[1] pleas to the jurisdiction challenging Appellants' suit to terminate the parent-child relationship and adopt K.T.R.

A. **The principles for statutory construction depend on the clarity of the statutory text**

The Court's primary goal in construing statutes is to give effect to the Legislature's intent. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830,

---

[1] Counsel refers to Appellee A.B. as "Mother" and to the child by her initials. *See* TEX. R. APP. P. 9.8(b).

838 (Tex. 2018); *TIG Premier Ins. v. Pemberton*, 127 S.W.3d 270, 273 (Tex. App.—Waco 2003, pet. denied). The Court should apply the plain meaning of the text unless the Legislature has provided a different definition, a different definition is required by the context, or the plain meaning would lead to an absurd result. *Rodriguez*, 547 S.W.3d at 838; *In re State ex rel. Parsons*, No. 10-17-00216-CV, 2019 WL 156798, at *3 n.4 (Tex. App.—Waco Jan. 9, 2019, orig. proceeding) (mem. op.).

Context is important. The Court reads statutes contextually to give effect to every word, clause and sentence. *Rodriguez*, 547 S.W.3d at 838. The Court thus considers the statutory scheme as a whole and how the statute in question fits within the broader statutory scheme. The Court strives to give the provision a meaning that is in harmony with other related statutes. *Rodriguez*, 547 S.W.3d at 838; *accord TIG Premier Ins.*, 127 S.W.3d at 273.

"Put differently, our objective is not to take definitions and mechanically tack them together . . .[;] rather, we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Id.* at 839 (quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017)).

However, if the statute is ambiguous, the Court may resort to extrinsic aids to construe the language at issue.[2] *See Rodriguez*, 547 S.W.3d at 838; *accord TIG Premier Ins.*, 127 S.W.3d at 273. A statute is ambiguous when its words are susceptible to 2 or more reasonable interpretations and legislative intent cannot be discerned from the text itself. *Rodriguez*, 547 S.W.3d at 838.

Section 311.023 of the Code Construction Act sets out the extrinsic aids a court may consider when construing a statute, including:

1) object sought to be attained;

---

[2]     *But see* TEX. GOV'T CODE § 311.023 (extrinsic aids may be considered by court "whether or not the statute is considered ambiguous on its face"); *Atmos Energy Corp. vi City of Allen*, 353 S.W.3d 156, 160 (Tex. 2011) (same); *In re State ex rel. Parsons*, No. 10-17-00216-CV, 2019 WL 156798, at *3 n.4 (Tex. App.—Waco Jan. 9, 2019, orig. proceeding) (same).

However, the Supreme Court has more recently strongly suggested that it is constitutionally impermissible to consider extrinsic aids when construing an unambiguous statute.

> [S]ection 311.023 of the Code Construction Act permits courts to consider a statute's legislative history whether or not the statute is considered ambiguous on its face. Although this section may grant us legal permission, not all that is lawful is beneficial. Constitutionally, it is the courts' responsibility to construe statutes, not the legislature's. In fulfilling that duty, we do not consider legislative history or other extrinsic aides to interpret an unambiguous statute because the statute's plain language most reliably reveals the legislature's intent. We have therefore repeatedly branded reliance on extrinsic aids as improper and inappropriate when statutory language is clear.

*Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018) (quotation marks, footnotes, and citations omitted).

2) circumstances under which the statute was enacted;
3) legislative history;
4) common law or former statutory provisions, including laws on the same or similar subjects;
5) consequences of a particular construction;
6) administrative construction of the statute; and
7) title (caption), preamble, and emergency provision.

TEX. GOV'T CODE § 311.023.

## B. If section 102.005 is unambiguous, its plain language read in context demonstrates that Appellants do not have standing

Like the statutes under consideration in *Rodriguez*, the language of section 102.005, standing alone, "is fairly easily understood." *See Rodriguez*, 547 S.W.3d at 838. But the Court must construe section 102.005 in light of "the statutory scheme as a whole" and must strive to assign it "a meaning that is in harmony with other related statutes." *Id.*; *accord TIG Premier Ins.*, 127 S.W.3d at 273. When the Court does so, the Court should conclude that sections 102.005(3) and (5) are properly construed as not applying to foster parents.

## 1. The Court must consider the statutory scheme as a whole

Chapter 102 of the Family Code governs standing in suits affecting the parent-child relationship. While Chapter 102 contains several statutes

touching upon standing, sections 102.003, 102.004 and 102.005 are the critical statutes to be considered in this analysis.

For a foster parent to have standing in a suit affecting the parent-child relationship, the child must have been placed in their home by the Department for at least 12 months. This requirement applies whether they file an original SAPCR or intervene in a pending SAPCR.

Section 102.003(a)(12) includes this 12-month placement requirement for standing to file an original SAPCR by a foster parent.[3] TEX. FAM. CODE § 102.003(a)(12).

Section 102.004 provides that a foster parent may not intervene in a pending SAPCR unless they meet the 12-month placement requirement. *Id.* § 102.004(b), (b-1). Section 102.004 provides in its entirety:

> (a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

---

[3] Section 102.003(c) does provide an exception to this 12-month placement requirement for a foster parent who "has been approved to adopt the child," if the child "is eligible to be adopted." TEX. FAM. CODE § 102.003(c). This exception does not apply to Appellants.

(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

(2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

(b) An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person, subject to the requirements of Subsection (b-1) if applicable, deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this chapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

(b-1) A foster parent may only be granted leave to intervene under Subsection (b) if the foster parent would have standing to file an original suit as provided by Section 102.003(a)(12).

(c) Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153.

Tex. Fam. Code § 102.004.

Finally, section 102.005 provides in its entirety as follows:

An original suit requesting only an adoption or for termination of the parent-child relationship joined with a petition for adoption may be filed by:

(1) a stepparent of the child;

(2) an adult who, as the result of a placement for adoption, has had actual possession and control of the child at any time during the 30-day period preceding the filing of the petition;

(3) an adult who has had actual possession and control of the child for not less than two months during the three-month period preceding the filing of the petition;

(4) an adult who has adopted, or is the foster parent of and has petitioned to adopt, a sibling of the child; or

(5) another adult whom the court determines to have had substantial past contact with the child sufficient to warrant standing to do so.

TEX. FAM. CODE § 102.005.

**2.  Read together, the statutes in Chapter 102 restrict standing for foster parents to situations where the child has been placed with them for at least 12 months**

Under section 102.003(a)(12), foster parents have standing to file an original SAPCR only after the child has been placed with them for 12 months. Under section 102.004, foster parents have standing to intervene in a SAPCR only after the child has been placed with them for 12 months. Under section 102.005, foster parents have standing to adopt a child if they have petitioned to adopt a sibling of the child (because they have standing to do so). These are the only standing provisions in Chapter 102 that apply to foster parents.

The Legislature added subsection (b-1) in 2017. Act of May 19, 2017, 85th Leg., R.S., ch. 341, § 1, 2017 Tex. Sess. Law Serv. 986, 986. Thus far, the Dallas Court is the only appellate court to conduct an in-depth analysis of the meaning and import of this statutory provision. That court has concluded on several occasions that section 102.004 is the exclusive means by which foster parents may intervene in a pending SAPCR. *E.g. In re M.B.*, No. 05-19-00971-CV, 2019 WL 4509224, at *3 (Tex. App.—Dallas Sept. 19, 2019, pet.) (mem. op.); *In re Nelke*, 573 S.W.3d 917, 921 (Tex. App.—Dallas 2019, orig. proceeding) ("Section 102.004(b) applies to any person who seeks to intervene in a pending suit even if that person may have had standing to bring an original suit."). The court further observed that "Subsection (b-1) limits when a foster parent may be granted leave to intervene." *Nelke*, 573 S.W.3d at 922 n.5. *Cf. In re C.E.L.*, No. 09-21-00294-CV, 2022 WL 619670, at *3-4 (Tex. App.—Beaumont Mar. 3, 2022, pet. filed) (mem. op.) (briefly addressing 102.004 before holding that foster parents had standing under section 102.005(3) and implicitly rejecting the Department's argument that

102.004(b-1) demonstrates legislative intent to exclude foster parents from having standing under section 102.005(3)).[4]

Appellants' counsel apparently agrees (or used to) that foster parents may not intervene in pending CPS litigation unless the child has been placed in their home for 12 months. "Foster parents are now prohibited from intervening in ongoing CPS litigation unless the CPS case has been extended beyond the statutory limit of 12-months due to 'extraordinary' circumstances." Stephen Carl, *Foster Parent Standing and Intervention in CPS Litigation: The History and the Impact of Texas's 2017 Amendment*, 71 BAYLOR L. REV. 673, 674 (2019).

- Section 102.004 "now bars a foster parent from intervening until the same twelve-month statutory requirement of Section 102.003(a)(12) is met." Carl, *Foster Parent Standing*, 71 BAYLOR L. REV. at 687.

- "[The 2017 amendment] makes it almost impossible for a foster parent to intervene in ongoing CPS litigation." Carl, *Foster Parent Standing*, 71 BAYLOR L. REV. at 689.

Most of the subdivisions of section 102.005 plainly do not apply here. Subdivision (1) applies only to step-parents; TEX. FAM. CODE § 102.005(1);

---

[4]    The Beaumont Court repeated an identical analysis a month later without even citing its prior decision in *C.E.L. See In re S.C.*, No. 09-21-00325-CV, 2022 WL 1037912, at *3-4 (Tex. App.—Beaumont Apr. 7, 2022, no pet.) (mem. op.).

subdivision (2) applies only to persons with whom a child has been placed for adoption; *id.* § 102.005(2); and subdivision (4) applies only to persons who have adopted a sibling of the child the subject of the suit or foster parents who have petitioned to adopt the sibling. *Id.* § 102.005(4).

Section 102.005(3) grants standing to "an adult who has had actual possession and control of the child for not less than two months during the three-month period preceding the filing of the petition." *Id.* § 102.005(3). If this provision applied to foster parents like Appellants, it would render useless sections 102.003(a)(12) and 102.004(b-1) which both expressly require foster parents to have had possession of the child for 12 months before they have standing.

This Court recognized as much in *Torres* where the Court considered the interaction between sections 102.003(a)(12) and 102.003(a)(9). *See In re Torres*, 614 S.W.3d 798 (Tex. App.—Waco 2020, orig. proceeding). There, foster parents sought to intervene in a suit where grandparents had filed a petition to modify a prior SAPCR order. The trial court denied the grandparents' plea to the jurisdiction and motion to strike the intervention. *Torres*, 614 S.W.3d at 800-01. The grandparents sought mandamus relief with this Court. *Id.* at 801.

The foster parents had had possession of the children on multiple occasions. During an initial suit filed by the Department of Family and Protective Services in 2018, the foster parents had had possession of the children "for approximately ten and a half months." *Id.* at 800. After the children were returned to their mother, they moved to Oklahoma. During that period, the foster parents had ongoing communication with the children by telephone and video conferencing, and they had possession of the children for 14 days in July and 7 days in November 2019 in addition to other weekend visits. *Id.*

The cumulative total of possession by the foster parents was less than 12 months. Instead, they argued that they had standing under section 102.003(a)(9) which grants standing to "a person, other than a foster parent," who has possession of the child for at least 6 months. *Id.* at 802 (citing TEX. FAM. CODE § 102.003(a)(9)). The Court rejected this contention.

> The status held by a party at the time of the filing of their pleading is not determinative for purposes of establishing standing. To hold otherwise would give any foster parent who had children in their home for more than six but less than twelve months from whom children were removed the ability to file a petition in intervention solely because they were no longer the foster parents.

> Therefore, we hold that the Speedys were required to either establish that they had "actual care, control, or possession" of the children for six months exclusive of their time as foster parents pursuant to Section 102.003(a)(9) or that they had "actual care, control, or possession" of the children for twelve months including the time they were foster parents pursuant to Section 102.003(a)(12).

*Id.* at 803.

The same principle should apply to Appellants. When a person's possession of a child is solely because of their status as a foster parent, they should not be permitted to claim standing under a different statute than section 102.003(a)(12) unless they have had possession of the child for a sufficient period "exclusive of their time as foster parents." *See id.*

Finally, section 102.005(5) confers standing on "another adult" whom the trial court determines "has had substantial past contact with the child sufficient to warrant standing to do so." TEX. FAM. CODE § 102.005(5).

To begin with, this subdivision refers to "another adult" which suggests that it means an adult other than those identified in the first 4 subdivisions of the statute. Because subdivision (4) refers specifically to foster parents, this would necessarily exclude them from inclusion in subdivision (5).

Next, the Court should hold, consistent with *Torres*, that Appellants must establish "substantial past contact" under section 102.005 "exclusive of their time as foster parents." *See Torres*, 614 S.W.3d at 803. Otherwise, this would render sections 102.003(a)(12) and 102.003(b-1) meaningless.

Finally, with respect to section 102.005 generally, that statute provides standing to file a suit only for termination and/or adoption. TEX. FAM. CODE § 102.005. Appellants thus contend that section 102.005 is the more specific provision than section 102.003 and controls here because it applies to a specific category of suits. However, their focus is misplaced. The question of standing focuses on whether a particular person or entity may bring the claim at issue, *i.e.*, whether they are "personally aggrieved." *See DaimlerChrysler v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008). Thus, the analysis should look to the person or entity at issue rather than the claim. In this context, section 102.003 is the more specific statute because of its highly specific laundry list of persons who have standing to file a SAPCR.

Accordingly, when this Court reads sections 102.005(3) and (5) in the context of the statutory scheme for standing established in Chapter 102, the Court should conclude that foster parents such as Appellants cannot assert standing under these provisions unless they can establish possession of or

substantial contact with the child separate and apart from their possession of and contact with the child as foster parents. *See Torres*, 614 S.W.3d at 803.

Here, Appellants cannot establish standing outside of their time as foster parents of K.T.R. Thus, they cannot establish standing under section 102.005(3) or (5).

**C.  If section 102.005 is ambiguous, the relevant extrinsic aids demonstrate that Appellants do not have standing**

A compelling argument can be made that section 102.005 is ambiguous for each of the reasons already stated but particularly because the parties here advance 2 reasonable competing interpretations of the statute. *See Rodriguez*, 547 S.W.3d at 838 ("A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the language alone.").

If the statute is ambiguous, this Court can resort to extrinsic aids to ascertain the Legislature's intent. *See Rodriguez*, 547 S.W.3d at 838; *accord TIG Premier Ins.*, 127 S.W.3d at 273. The legislative history for Chapter 102 is the most important extrinsic aid for the Court's consideration. *See* TEX. GOV'T CODE § 311.023(3).

## 1. Legislative history—section 11.03

The 69th Legislature enacted Texas's current framework for standing in SAPCR's by its enactment of the former section 11.03.

Section 11.03 provided a 4-part framework for standing. Under section 11.03(a), the Legislature promulgated a laundry list of persons or entities with standing to file an original SAPCR. Act of May 25, 1985, 69th Leg., R.S., ch. 802, § 1, 1985 Tex. Gen. Laws 2841, 2842 (amended 1989).[5] That original laundry list included: (1) a parent; (2) the child through an authorized representative; (3) a custodian or person with visitation rights under a court order; (4) a guardian; (5) a governmental entity; (6) any authorized agency; (7) an alleged or probable father of an illegitimate child; (8) "a person who had actual possession and control of the child for at least six months immediately preceding the filing of the petition"; or (9) a person designated

---

[5]     The Legislature amended section 11.03(a) twice. In 1989, the Legislature amended section 11.03(a)(7) to include more modern and politically correct nomenclature for a child born out of wedlock, namely, granting standing to "a man alleging himself to be the biological father of a child who has no presumed father." Act of May 29, 1989, 71st Leg., R.S., ch. 375, § 2, 1989 Tex. Gen. Laws 1477, 1477-78. In 1993, the Legislature added a 10th category of persons to the laundry list, namely, "a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months immediately preceding the filing of the petition and the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition." Act of May 7, 1993, 73d Leg., R.S., ch. 168, § 1, 1993 Tex. Gen. Laws 321, 321.

as managing conservator in a relinquishment affidavit or given written consent to adopt. *Id.*

Section 11.03(b) authorized a grandparent or "any other person deemed by the court to have had substantial past contact with the child" to file an original suit for managing conservatorship.[6] *Id.*

Section 11.03(c) authorized a grandparent or "any other person" with substantial past contact to intervene in a pending SAPCR and request possessory conservatorship. *Id.*

Finally, section 11.03(d) authorized the following persons to file an original suit for adoption or for termination and adoption:

(1) a stepparent of the child;

(2) an adult who, as the result of a placement for adoption, has had actual possession and control of the child at any time during the 30-day period immediately preceding the filing of the petition;

(3) an adult who has had actual possession and control of the child for at least two months during the three-month period immediately preceding the filing of the petition;

---

[6] The 73rd Legislature also amended section 11.03(b) by deleting other persons with "substantial past contact" and conferring standing solely on grandparents to seek managing conservatorship. Act of May 7, 1993, 73d Leg., R.S., ch. 168, § 2, 1993 Tex. Gen. Laws 321, 322.

(4) another adult whom the court determines to have had substantial past contact with the child sufficient to warrant standing to do so.

*Id.*

These four provisions were to be read together. *See Rodriguez*, 547 S.W.3d at 838. Subsection (a) provided a laundry list of 9 (later 10) categories of persons or entities who had standing to file an original SAPCR. Subsection (b) provided standing for a suit seeking managing conservatorship for grandparents and other persons with "substantial past contact." Grandparents were not in the laundry list of subsection (a). The "other persons" contemplated by subsection (b) should necessarily exclude those included in the laundry list because they already have standing to bring an original SAPCR. If a person included in the laundry list were considered to have also been included under subsection (b), that would render the general standing provision meaningless with respect to those persons. The same is true for "intervention standing" under subsection (c).

The same is also true for standing of "adults" under subsection (d) to file suit for termination and/or adoption. Again, a stepparent (identified in (d)(1)) is not included in the laundry list. The terms "adult" and "another adult" should likewise be construed to exclude those identified in the

laundry list. If a person included in the laundry list were considered to have also been included under subsection (d), that would render the general standing provision meaningless with respect to those persons.

This reading of section 11.03(d) also directly addresses Appellants' contention that section 102.005 is a more specific provision that controls here because it applies to a specific category of suits. In this context, section 102.003 (and its predecessor article 11.03(a)) is the more specific statute because of its highly specific laundry list of persons who have standing to file a SAPCR.

Accordingly, in construing the former section 11.03, the Court must conclude that the term "adult" or "another adult" as set out in section 11.03(d) refers to persons other than those included in the laundry list of section 11.03(a).

## 2. Legislative history—the 1995 recodification

When the 74th Legislature repealed the former Title 2 of the Family Code and recodified it as Title 5, the Legislature broke the respective standing provisions of former section 11.03 out into 3 separate statutes— sections 102.003, 102.004 and 102.005. *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, secs. 102.003-102.005, 1995 Tex. Sess. Law Serv. 113, 125. This was

a nonsubstantive recodification. *Jones v. Fowler*, 969 S.W.2d 429, 431 (Tex. 1998).

Accordingly, the legislative decision to divide the standing provisions of former section 11.03 into 3 different statutes did not alter their meaning.

### 3. Legislative history—subsequent amendments

Since 1995, the Legislature has enacted several significant[7] amendments to these statutes that impact their construction.

In 1997, the Legislature gave foster parents standing to file an SAPCR if the child had been in their home for at least 18 months. Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 3, 1997 Tex. Sess. Law Serv. 2012, 2012-13.

Two years later, the Legislature reduced the length of placement to 12 months for foster parents—enacting the statute as it currently exists. Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 2, 1999 Tex. Sess. Law Serv. 4696, 4696-97.

In 2007, the Legislature amended section 102.005 to include a standing provision for "an adult who has adopted, or is the foster parent of and has

---

[7] For the sake of completeness, the Legislature has enacted additional amendments to the relevant statutes beyond the ones discussed here, but the amendments discussed herein have the most relevance to the issues presented.

petitioned to adopt, a sibling of the child." Act of May 28, 2007, 80th Leg., R.S., ch. 1406, § 3, 2007 Tex. Sess. Law Serv. 4800, 4800-01.

And finally, in 2017, the Legislature amended section 102.004 to provide that a foster parent may not intervene in a pending SAPCR unless the child has been placed with them for at least 12 months. Act of May 19, 2017, 85th Leg., R.S., ch. 341, § 1, 2017 Tex. Sess. Law Serv. 986, 986.

The 1997 amendment giving foster parents standing for the first time to file any kind of original SAPCR was significant because it added foster parents to the laundry list and specified the conditions under which foster parents may file a SAPCR. At that point (based on the construction discussed above regarding former section 11.03), foster parents could assert standing in a SAPCR only if they qualified according to the terms of section 102.003(a)(12). Because they were added to the laundry list, the provisions of sections 102.004 and 102.005 no longer applied.

The 1999 amendment shortened the period during which foster parents may qualify for standing.

The 2007 amendment created standing for a unique subset of foster parents to file a termination and/or adoption suit, namely, any foster parent who "has petitioned to adopt . . . a sibling of the child."

Finally, the 2017 amendment restricted when foster parents may intervene in a SAPCR as opposed to filing an original SAPCR. As this Court has observed, a person's standing to intervene is generally commensurate with their standing go file an original suit. *In re A.C.*, No. 10-15-00192-CV, 2015 WL 6437843, at *9 (Tex. App.—Waco Oct. 22, 2015, no pet.) (mem. op.). The 2017 amendment codified this principle for foster parents. Thus, a foster parent may not intervene in a pending SAPCR unless they have standing under section 102.003(a)(12). TEX. FAM. CODE § 102.004(b-1); *see M.B.*, 2019 WL 4509224, at *3; *Nelke*, 573 S.W.3d at 922 n.5; *see also* Carl, *Foster Parent Standing*, 71 BAYLOR L. REV. at 674, 687, 689.

Accordingly, when the Court considers the legislative history of these statutes, the Court should conclude that foster parents must establish their standing under section 102.003(a)(12). Further, because foster parents are included in the laundry list of persons with standing in SAPCR cases under section 102.003, the provisions of sections 102.004 and 102.005 apply to them in only two respects. First, section 102.004 limits their ability to intervene in pending SAPCR's. And second, section 102.005(4) provides standing for a narrow subset of foster parents who have petitioned to adopt a sibling of the child whom they seek to adopt. The provisions of section 102.005 referring

to an adult with "actual possession and control of the child" and "another adult" with "substantial past contact" simply do not apply to foster parents.[8]

### D. Section 102.004 is the only means of intervention in a SAPCR for foster parents

Appellants claim that section 102.004(b) does not apply to persons seeking relief other than possessory conservatorship. *Appellants' Petition* at 33. They are wrong.

"Section 102.004(b) applies to any person who seeks to intervene in a pending suit even if that person may have had standing to bring an original suit." *Nelke*, 573 S.W.3d at 921.

Subsection (b) provides:

> An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person, subject to the requirements of Subsection (b-1) if applicable, deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this chapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

---

[8]  This Court reached the opposite conclusion in *A.C.*, but the Court issued that decision before the 2017 amendments to section 102.004. *In re A.C.*, No. 10-15-00192-CV, 2015 WL 6437843, at *9 (Tex. App.—Waco Oct. 22, 2015, no pet.) (mem. op.).

Tᴇx. Fᴀᴍ. Cᴏᴅᴇ § 102.004(b).

Subsection (b) begins with a sentence prohibiting the filing of an original suit seeking only possessory conservatorship by non-parents. But the remainder of the subsection grants standing to non-parents to intervene in a SAPCR if they have "substantial past contact with the child" and if they make a showing that appointment of one or both parents as managing conservator(s) would significantly impair the child.

The statute thus contemplates that the non-parent intervenor would be seeking, at minimum, appointment as managing conservator because the parents are unsuitable to serve in this capacity. Texas courts have regularly observed and have long held that non-parents may intervene under subsection (b) and seek managing conservatorship. *E.g.*, *In re S.M.D.*, 329 S.W.3d 8, 14 (Tex. App.—San Antonio 2010, pet. dism'd by agr.); *Whitfield v. Whitfield*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *In re Hidalgo*, 938 S.W.2d 492, 496 (Tex. App.—Texarkana 1996, no writ).

The trial court properly struck Appellants' petition in intervention to the extent Appellants sought to intervene under section 102.005 of the Family Code because section 102.004(b) provides the sole basis for intervention by a foster parent in a SAPCR.

### E.    C.E.L. was wrongly decided

Appellants rely heavily on the decision of the Beaumont court in *C.E.L.* to support their contentions. However, based on the above analyses, this Court should conclude that the Beaumont court's cursory analysis failed to fully address or consider the relevant statutes and their legislative history and, as a result, is a poorly reasoned decision.

The Beaumont court did pay lip service to arguments similar to those raised by the Mother and the Department in this case. The court observed, "The Department argues that foster-family specific amendments to sections 102.03   and 102.004 of the Family Code demonstrate the Legislature's intent to exclude foster parents from section 102.005(3)." *C.E.L.*, 2022 WL 619670, at *2.

Then, the court reviewed the statutory history of sections 102.003, 102.04   and 102.005 since the Legislature first granted standing to foster parents in 1997. *Id.*, 2022 WL 619670, at *3-4. But the court failed to consider the statutory predecessor to these statutes.

Next, the court cited 2 cases before concluding that foster parents can establish standing to file a suit for termination and/or adoption under

section 102.005(3) if they have had possession of the child for at least 2 months. *Id.*, 2022 WL 619670, at *4.

The Beaumont court first cited a 2009 decision of the Amarillo court that held with no analysis that foster parents can establish standing under section 102.005(3). *Id.* (citing *In re J.H.M.*, No. 07-07-00109-CV, 2009 WL 5174364 (Tex. App.—Amarillo Dec. 29, 2009, no pet.) (mem. op.)). The Amarillo court held:

> Foster parents now have a couple of avenues to the courthouse. Under § 102.003 of the Family Code, they can bring an original suit affecting the parent-child relationship (SAPCR) if the child was placed with them by the "Department of Protective and Regulatory Services" and has lived with them "for at least [twelve] months ending not more than [ninety] days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(12) (Vernon Supp. 2009). Under § 102.005 of the same Code, foster parents who have not had possession of the child for at least twelve months, ninety days before they file suit may nevertheless have standing to request termination and adoption if they have "had actual possession and control of the child for not less than two months during the three month period preceding the filing of the petition." *Id.* § 102.005(3).

*J.H.M.*, 2009 WL 5174364, at *4.

Curiously, no court other than the Beaumont court has cited *J.H.M.* for the proposition that a foster parent has standing to seek termination and/or

adoption under section 102.005(3) if they have had possession of the child at least 2 months—not even the Amarillo court itself.

Further, the Amarillo court issued this decision before the Legislature amended section 102.004 to add subsection (b-1) and prevent foster parents from intervening in a SAPCR unless they have had possession of the child for at least 12 months.

And finally, the Amarillo court issued this decision without any meaningful effort to engage in statutory construction considering the statutory scheme as a whole or its legislative history.

For each of these reasons, the Amarillo court's decision in *J.H.M.* provides at best questionable support for the Beaumont court's decision in *C.E.L.*

The Beaumont court also relied on a 2019 decision of the Fort Worth court that does NOT involve foster-parent intervention. *C.E.L.*, 2022 WL 619670, at *4 (citing *In re Y.J.*, No. 02-19-00235-CV, 2019 WL 6904728 (Tex. App.—Fort Worth Dec. 19, 2019, pet. denied) (mem. op.)). In *Y.J.*, a couple (the "Bs") who had already adopted Y.J.'s half-brother intervened in a termination suit initiated by the Department on behalf of Y.J. The Bs sought termination of parental rights and to adopt Y.J. under section 102.005(4).

Because Y.J. is Native American, the Navajo Nation opposed the intervention. Instead, the Navajo Nation asked that Y.J. be placed with her mother's great aunt who is also a Native American. *Y.J.*, 2019 WL 6904728, at *3. The trial court ultimately terminated the mother's parental rights and appointed the Bs and the great aunt as joint managing conservators. *Id.*, 2019 WL 6904728, at *4.

On appeal, the Navajo Nation challenged the intervention by the Bs under section 102.005(4) and argued that the statute authorizes only an original suit and only for termination and/or adoption (as opposed to conservatorship). The Fort Worth court rejected these contentions for several reasons. *Id.*, 2019 WL 6904728, at *5-7. Among other things, the court recognized that the Bs had standing to file an original suit under section 102.005(4) because they had adopted Y.J.'s half-brother. Their standing was not as foster parents but as persons who had adopted the child's sibling. Here, however, Appellants cannot establish original standing under section 102.005(4). Nor could the appellants in *C.E.L. Cf. C.E.L.*, 2022 WL 619670, at *4. Thus, the decision in *Y.J.* offers little support for the Beaumont court's decision in *C.E.L.*

Regardless, the Beaumont court concluded by holding that, because the foster parents in that case had had possession of the children for at least 2 months, they had standing under section 102.005(3)—even though they did not have standing under section 102.003(a)(12) or 102.004(b-1). However, this construction does not properly give consideration to the entire statutory scheme and renders sections 102.003(a)(12) and 102.004(b-1) meaningless.

The Beaumont court's decision is poorly reasoned, and this Court should decline to follow it.

## F.     This Court should affirm the judgment

For each of the reasons stated, Appellants failed to establish standing under section 102.005(3) or (5). The trial court thus properly struck their plea in intervention and properly granted the Department's and Mother's pleas to the jurisdiction challenging Appellants' suit to terminate the parent-child relationship and adopt K.T.R.

Accordingly, this Court should affirm the judgment. *See* TEX. R. APP. P. 43.2(a).